and its actions following the entry of that order, demonstrate that it did indeed find a bona fide doubt existed, and second, this Court should find that after finding a bona fide doubt, the trial court failed to demonstrate its own exercise of judgment regarding Mr. Doolin's fitness and instead relied improperly on the stipulations of counsel and Mr. Doolin himself. With regard to the first issue concerning the trial court's finding of a bona fide doubt, three indications in the record that the trial court did indeed find a bona fide doubt in this case. But first I just want to explain that this issue really comes down to whether the trial court was proceeding under one of two relevant statutory subsections. Under the statute section 10411, subsection A pertains to what the trial court's duties are upon finding a bona fide doubt of fitness, which can be raised by either side or the court itself. And once the court finds a bona fide doubt, it is required to hold a fitness hearing. Subsection B of the statute pertains to what the court may do in order to determine whether a bona fide doubt exists in the first place. And it states that the court may appoint an expert to assist in that determination, and the proceedings will not be delayed during that process. So the first indication in the record that the court was actually proceeding under subsection A is its own handwritten order that was entered on May 26 in this case. The order stated defense raises a bona fide doubt based on a review of Mr. Doolin's medical records from the Social Security Administration. The language of that order is more directly related to subsection A. The court used the language of a bona fide doubt, stated that a bona fide doubt had been raised, and appointed an expert to evaluate Mr. Doolin for his fitness to stand trial, which is the ultimate determination that's being considered under subsection A. Let me ask you, though, is it necessary for the court to do something more rather than just acknowledge that a bona fide doubt had been raised by one of the parties? Your Honor, I think it's fair to say that the Supreme Court's case law does require the trial court to make a finding of a bona fide doubt. Do we have that here anywhere? I believe that the handwritten order combined with the trial court's actions following the entry of that order show that the court did find a bona fide doubt in this case. And when you say that the handwritten order combined with its actions, are you talking about the order you just read from? Yes. That acknowledges that the bona fide doubt had been raised, but that does not in anywhere in that order. It doesn't say that the court finds a bona fide doubt and therefore will appoint Dr. Cuneo or somebody else, right? That's true, Your Honor. I think the Zof case that we cited in our briefs is instructive on that point. In that case, the court pointed out that trial courts are to appoint Dr. Cuneo simply for the purpose of determining if a bona fide doubt existed in the first place. The court could have made that clear in its order, but instead the court said that defense had raised a bona fide doubt and that it was appointing Dr. Cuneo to evaluate Mr. Doolin's fitness to stand trial, which as I said before, is the determination being made under subsection A rather than subsection B. But even outside of the order, like I said before, the trial court's actions following the entry of that order show that it was in fact proceeding under subsection A. The first indication we have of that is that the status hearing on July 1st, the both defense counsel and the trial court informed Mr. Doolin on a couple different occasions that the proceedings could not continue until the fitness issue was resolved. And under the statute, that only pertains to subsection A. The statute explicitly states that subsection B is only if a bona fide doubt has been found that the proceedings must be delayed for a fitness hearing to be held. And then following that, at the next appearance on August 25th, the trial court proceeded as if it understood the next step to be a fitness hearing. The trial court informed Mr. Doolin that he had a right to have a jury determine the matter of his fitness. That would not be the case unless the court had already found a bona fide doubt existed. The court informed Mr. Doolin that if he did not stipulate that the next step would be to hold the hearing. And again, that would not be the case if the court was simply determining if a bona fide doubt existed in the first place. So certainly I agree, Your Honor, that the language of the order could have been clearer. But I think the language of the order, which, like I said before, cues more closely to the language of subsection A combined with how the trial court handled the proceedings following the entry of that order, shows that it did, in fact, find a bona fide doubt and was proceeding accordingly. And I do want to address the two cases cited by the state that sort of go to that issue from the third district appellate court, the Edwards and Houston cases. This court should not follow those cases, both because they are factually distinguishable and they're analytically flawed. In those cases, the third district was faced with court orders, both of which actually did what Your Honor was just suggesting, that the court finds a bona fide doubt. The orders were pretty explicit in that regard. However, in the Edwards case, the order was drafted in advance by defense counsel along with a motion that defense counsel filed simply seeking an examination. And in the Houston case, the order was a pre-printed form order, likewise going along with counsel's mere request for an examination. The court in that case held that even though the court's explicitly stated that a bona fide doubt had been found, there was nothing else in the record of those cases to indicate that that actually was the case. Here, the facts are different, both because the order was not drafted in advance by defense counsel. It was actually a handwritten order following court proceedings, reflecting a specific discussion about Mr. Doolin's medical records. And we do have more in this record. We have, as I was just discussing, how the trial court was handling those proceedings after entry of the order that shows how it was proceeding under the subsection A of the statute. Assuming the court did find a bona fide doubt, what's lacking, do you think, in the court's ultimate finding? It's fairly common practice that they don't call the psychiatrist or the doctor and they stipulate his report or qualifications, and that's what's happened here. Then the judge said, based on the stipulations and the judge's findings, what else should the judge have done, in your opinion? There's two things the judge should have done, Your Honor. First, the case law is clear that it is appropriate for a trial court to rely on stipulations to expert testimony. So if the court had said, I've read the report and I'm accepting a stipulation that the expert would testify in accordance with his report, that would be a different story. But it is absolutely improper to rely on stipulations to the ultimate conclusion of fitness, and that is what the court did in this case. The other thing that the court should have done differently is, even if it had, as the state has suggested in its brief, even if it's had read the report and based its conclusion on more than just the stipulation, it needed to make that clear on the record. The Cook case that we cited in our brief, the Contorno case also cited, both of those explain that it really is make his findings of fact on the record, even if it's brief. But the judge needs to make those findings on the record and explain that the finding of fitness is based on more than just a stipulation to the ultimate issue of fitness. And again, I just want to emphasize that how the court conducted the proceeding, it was very clear that the court was giving the choice to Mr. Doolin himself. The court opened up the proceedings by saying, Mr. Doolin, you have a choice. You can go to a fitness hearing where you would have a right to a jury, or you can stipulate to the finding of Mr. Cuneo that you're fit to stand trial. And when Mr. Doolin said that he wanted to stipulate, the court accepted those stipulations. And then in entering its finding, the judge specifically stated, based upon counsel's stipulation to Dan Cuneo's qualifications and to his findings that Howard Doolin is fit to stand trial, and also Mr. Doolin's stipulation to the stating that it's relying on the stipulation to the ultimate finding of fitness. The court never made clear that it was relying on anything beyond that. And it's really doubly improper to put this choice to Mr. Doolin as he is not the appropriate person to be determining his own fitness. And I also just want to point out that the lack of discretion exercise in this case is problematic given the content of the report. This is not a situation where a defendant perhaps acted up in court and then was just found to be malingering or acting out. So if we agree with you that this should go back for a retrospective fitness hearing, how do you envision that occurring? What would happen next? Certainly. So at a retrospective fitness hearing, the trial judge would essentially hold a hearing on whether or not Mr. Doolin was fit at the time of the original fitness hearing. So he could review the report again. If the parties chose to call Mr. Cuneo in to testify, they could do so, or they could stipulate to the testimony. But the court would essentially be reviewing Mr. Cuneo's report and making an independent determination of whether Mr. Doolin was in fact fit at that time. This hearing could be over in two sentences. The judge could say, I accept the stipulations as to the report, I read the report, and I find its conclusions valid, and I find Mr. Doolin fit. Three sentences, maybe. That certainly could be the case, Your Honor. I think it's hard to speculate at this point. They could call people in and have a hearing. They could still have the jury finding and all that. But the judge could say, I've read the report. I just didn't say it at the time. That could happen, correct? It could happen, Your Honor, yes. But I still believe it's very important because it's a matter of due process, and it's a matter of really the legitimacy of the court proceedings. We want to make sure that if Mr. Doolin was tried and sentenced to three consecutive natural life terms, that he was actually fit to do so at the time. Right. Thank you. Other questions? Justice Barberos? Not at this time, no, thank you. Justice McHaney? No questions. All right, thank you. We'll be given time for rebuttal in just a few minutes. Thank you. Atwood, do you already proceed? Yes, Your Honor. All right, you may do so. Thank you. Good morning, Your Honors. Counsel, may it please the court. My name is Nicholas Atwood, and I represent the people of the state of Illinois in this matter. I will also address Issue 1, but there are a few things I want to discuss regarding the other issues and in response to the defendant's reply brief. Regarding Issue 1, whether the trial court conducted it was required to conduct a fitness hearing. I think it's important that the court remember the procedural posture that we have in this case. This error wasn't properly preserved, and so in order for this to be determined not to be forfeited, defendants got to show clear error. Well, we don't have clear error here. As the justices have alluded, we have a bit of a convoluted record, and one thing I want to point out with regard to this record, it's not even clear that these handwritten orders were in the judge's own pen. If you look at C-328 of the common law record, C-329, both attorneys and the judge have signed them. I'm not a handwriting expert, but I can't tell who wrote that order. It's entirely possible the defense counsel or the prosecutor drafted an order and handed it up to the judge to be signed. And what's notable, we also don't have the transcripts from those dates. That burden is on the appellant to provide the transcripts, so we would have known what happened in court on that date. The docket indicates that there was no transcript prepared, but if you're going to raise this issue, it's incumbent upon the appellant to provide a bystander's report or some other way so that we could tell what happened. Now, thinking of that confusion, we look at those two orders, and we have two orders. The C-328 refers to defendant moving to evaluate his fitness, and then in C-329, we have some language that so this isn't clear error. We don't even know if the court's just using those terms interchangeably. We certainly don't have a court making an express finding that a bona fide doubt exists. This order makes this more akin to the third district case in People v. Houston. This case is almost identical to that one. We have in Houston, the defense counsel stated, quote, at this time, I'm requesting a fitness evaluation. Based on my conversation with the defendant, I believe there's a bona fide doubt whether he's fitness or not. Like this case, counsel did not file a motion with specific language referring to the statutory sections. He only filed a motion to continue. There was, like I said, no statutory reference at all. The pre-written order was just signed. There was no express finding, and the defendant was found fit with a similar stipulation procedure that we have had in this case. The court in that case held that this is not enough to determine whether a bona fide doubt existed. All we have is just the use of the word bona fide doubt. That does not equate to an express finding that a bona fide doubt existed. And this is setting aside whether or not this would even qualify as invited error, considering that defendant and his own counsel both stipulated and defendant seemed in a hurry to have his trial and was eager to move forward with the proceedings. But that being said, the Edwards case, Houston, numerous other courts have all found that you need something more to find that there was an express finding of a bona fide doubt, and we just don't have that in this case. And so with that, one of the other issues I want to address is the Rule 608. This had to do with the credibility bolstering. Illinois Rule of Evidence 608 states that credibility bolstering can occur only after the character of the witness for The interpretation of the of the phrase for otherwise appears to be a case of first impression in this state, and it is the people's contention that it makes sense to apply when opening arguments by defense counsel attacked the witness's credibility in this case. Throughout his opening argument, defense counsel attacked DeMorian's credibility. He accused him of being in cahoots with his mother to cover up their own involvement in this case. He essentially called the state's witness a suspect in this murder. So if this rule is to make any sense, we can't allow an opening argument to make this type of allegation because a defendant could simply then not put on any evidence in support of that claim, and the state would have no recourse. Now, there was no Illinois case referring to this, but I did cite Alberts v. Texas, which had the identical language in their Rule 608, which was an offshoot of Federal Rule 608, the same rule from which our own rule of evidence originated. That case was exactly like this case. The Alberts case found that it was proper to rehabilitate a witness after the credibility was attacked in opening argument. Interestingly, Rule 608 in Texas has since been amended, and they actually dropped the language by opinion or reputation, evidence or otherwise. So the new rule reads, admissible only after the character of the witness for truthfulness has been attacked, which means in any manner, in any form, during opening arguments, closing arguments, and during evidence. Defendant, in this case, seems to indicate that it can only be done via the presentation of some evidence, but I would submit to this court that that's an overly narrow reading of the rule, and it wouldn't be logical. As I said, a defendant could say anything they wanted in opening argument, attacking the credibility, planting that seed of doubt into a witness, and then never support that with any evidence at trial. And so I think a proper reading of Rule 608 would include the term or otherwise to mean in opening arguments when the case is being laid out for the jury. The other issue I want to discuss is Issue 4 regarding the crankle inquiry. Defendant argues that the trial court should have conducted a crankle inquiry, but as the state has submitted, the trial court had no jurisdiction to conduct a crankle inquiry, and that is because defendant filed his notice of appeal contemporaneously with his pro se motion alleging ineffective assistance of counsel. And our Supreme Court has been very clear. In People v. Patrick, the court said that jurisdiction to the appellate court attaches when the notice of appeal is filed, and in that case, it was also in the context of a crankle inquiry. However, it simply wasn't contemporaneous. In his reply brief, defendant cited Rule 606B and stated that the court should retain jurisdiction when it was contemporaneously filed. But Rule 606B does not apply to common law crankle inquiries. 606B only applies to post-trial motions. And importantly, we had a post-trial motion in this case. Defense counsel filed a post-trial motion, and it was ruled upon before defendant filed his pro se crankle inquiry. And what else is important to note, Rule 606B doesn't apply because the purpose of a crankle inquiry is not to have an evidentiary hearing, which would be required in this case because defendant's claim involved a possible jury tampering or jury being in an open courtroom. The nature of the jury deliberations were held in open court, but there's no evidence in the record as defendant acknowledged as to what actually happened. And so a crankle inquiry wouldn't even resolve that issue. It's only to determine whether counsel should be appointed to assist the defendant. And the defendant is not without a remedy. He can raise this very same claim under the Post-Conviction Hearing Act. So I think it's very clear, Patrick and numerous other cases, in fact, defendant doesn't cite a single case that would support his interpretation of this procedure. Patrick is clear. Notice of appeal is the deadline for filing any form of a crankle inquiry. The only cases I think defendant might have cited errors, but in errors, there was a pending post-trial motion that had not been ruled on. So the court retained jurisdiction because that pending post-trial motion was still there and had not had a final judgment. That's distinguishable from this case. And the rule is clear. When notice of appeal files, the appellate court loses jurisdiction. Otherwise, I think as the Dar Court noted, a defendant could file a crankle inquiry at any time after a notice of appeals filed, there would be no true deadline. And while that's not exactly what happened in this case with the contemporaneous filing, it is logical and the another issue I wanted to briefly discuss was the 431B, the court's questioning during voir dire. This court's case in People v. Brown is directly on point in this issue. Defendant had cited some case law, Wilmington and Belknap, that talked about specific language needing to be used. But as I stated in the brief, there is no specific language. What's important is that a question and response procedure exists. In this case, the only issue is whether or not the court's questioning of the jury whether they can apply is tantamount to whether they could accept under Rule 431B. And the people would submit to this court, you cannot apply something if you don't accept something. As this court found in Brown, this is similar language. It would make no sense for the court to find that can apply is in any way distinguishable from accept because it is assumed that if you do that, and more importantly, this court found that this Q&A procedure was proper in that case. And I would ask the court to find the same in this case. A couple of cases I did want to distinguish. Defendant cited People v. Zoth with regard to the bona fide doubt issue, but that case was distinguishable. In Zoth, there was an oral pronouncement by the court. And we know that when the court issues a written order and makes an oral pronouncement, it's the oral pronouncement that controls. And the court clearly stated in that case that it did find that a bona fide doubt existed. And with regard to the actual review of the fitness document itself, in the Cook case, the defendant cited, there was no indication that court actually exercised any discretion at all. Whereas in this case, it was clear from the record that the court did in fact read the report because he referred to it, not specifically its findings, but his language indicated he reviewed it before he discussed whether defendant wanted to stipulate. And I see that I'm out of time. Do your honors have any questions regarding those arguments? This is barbarous. No, thank you. Justice McKinney. Counsel, isn't it problematic that the trial court asked the defendant to stipulate to his own fitness? I don't think it's problematic. If the court had only relied on that, I believe it could be problematic because the defendant's not really in a position to make that claim. But he asked his attorney, he asked the defendant himself, he had reviewed the document. It was clear there was no issue of fitness. And if we look at the record, there's no issue here. The defendant was always able to involve himself. He testified at trial. I think the court was maybe just speaking a bit off the cuff, but I don't think it was not something the court relied upon the defendant's statement by itself. It was the representations of his counsel, of him, of the findings in the report. I don't think it was really a primary concern of the court to review the document, meaning Dr. Cuneo's report. Where exactly is that? I think it can be inferred, Your Honor. And I believe he's talking about page 75 to 78 is when he's making that discussion. And I do not remember exactly what he said. I know it's in the brief that there was some indication based on the word choice he used that he had read this report. Do you agree with this report's findings? And he said that before anyone announced what the findings were. And so to me, logically, he's read those findings and he's not just relying on what the statements are about to be. It's not even a lengthy report. So I think the court did review it. But again, there was no official finding one way or the other as far as him saying a bona fide doubt exists. Okay. Yeah, I'd be more comfortable with your statement if there was someplace specific in either the brief or in the record that points out that the court, in fact, stated it reviewed the document. Certainly. I believe it's just an inference based on the language used. Okay. Thank you. Thank you. Thank you, Mr. Atwood. And with that, I would ask the court to affirm. All right. Thank you. Ms. Peterson, rebuttal. Still on mute. Sorry. I apologize. Yes, Your Honor. Just two quick points. And then I would like to address the crankle issue. First, with regard to the finding of the bona fide doubt, counsel was arguing that there is no clear error because the order is not clear. Well, I would submit that we have more than the order in this case. The trial courts are presumed to know and follow the law. And in this case, the court entered an order recognizing that a bona fide doubt had been found and then continued to proceed as if a bona fide doubt had been found at the future proceedings. And any error in this case can't be invited with regard to fitness proceedings, even if the state had raised that in their brief, which they did not, because a defendant has to be fit to stand waived or invited. With regard to the Rule 608 issue, counsel is describing this as an issue of first impression. I think it's fair to say that the specific issue of whether a character for truthfulness can be attacked in an opening statement has not been directly addressed in an Illinois case. However, there are a couple of cases that are very close. The Stevens case, in particular, from the 4th District that we cited in our briefs. Actually, I believe the one in that case, the state improperly bolstered another witness's credibility by eliciting testimony in their own direct examination. And the court held that because the witness in question had not yet had their character for truthfulness attacked by defense evidence, by some witness providing reputation or opinion evidence, that bolstering was improper at that point. And then there's also the Stanbridge case, which talks about how curative admissibility, which this type of bolstering would be a type of curative admissibility, needs to be used very cautiously and that courts should be very hesitant to allow the state to use this kind of evidence in their case in chief. With regard to the Krenkel issue, it is our position that Patrick does not directly address this situation. Patrick was concerned with whether a defendant's allegations of ineffective assistance raised after the time for filing a motion for new trial, but while the court still had jurisdiction over the case, could be addressed by the trial court. And in that case, the Patrick court held that it could. And really, the spirit of Patrick is about not allowing rules of civil procedure, rules of criminal procedure to cut short a defendant's ability to bring up, pro se, allegations of ineffective assistance. And so although the Patrick court did say that the time for filing Krenkel allegations ends with the notice of appeal, I read that more as saying that the deadline is essentially the deadline for filing a notice of appeal. So once the time for filing of a notice of appeal is over, then the time for filing Krenkel allegations is also over. And so really what we have is a question of when a motion alleging ineffective assistance is filed, either concurrently or before a notice of appeal is filed, which controls. And Rule 606B provides, in most cases, that the motion controls rather than the notice of appeal. So I don't think Patrick should be read to cut short a pro se defendant's ability to raise allegations of ineffective assistance. And I think to the extent that the DARR court holds that it does, that that case was wrongly decided. So I would say in response to counsel's argument that there is no deadline, that really there would be a deadline, it would be the 30 days after judgment is entered. So anytime during that time frame, if defendant files pro se allegations of ineffective assistance, those allegations should be addressed as they were in this case. And really, there is logic behind that rule, which would be if, let's say, counsel files a notice of appeal on the same day that a defendant raises allegations of ineffective assistance, we would certainly want the trial court to address those allegations in that circumstance. Obviously, this case is a little bit different, but I think the rule would still apply equally in this case. So with that, I'm happy to answer any further questions the court has. With regard to the 608 issue, I question whether or not the defendant can show prejudice, even if that was a violation, because this doesn't seem to be a close case otherwise. I understand your Honor's concern. I would just say that this case really hinges entirely on witness credibility. You know, there was no physical evidence, there's no eyewitnesses. And really, the first people that were connected to this crime by the police were Jolanda and DeMoran Davis. And the state's case rested entirely on their testimony. So to the extent that the state was bolstering DeMoran's credibility before DeMoran even had a chance to testify, that was prejudicial because the jury had to decide credibility between DeMoran and Jolanda on one hand and Mr. Doolin on the other hand. And really, it was the jury's function to make that call. Well, the jury also heard the jailhouse calls too, right? That's true, Your Honor. So Mr. Doolin provided an explanation for those calls in his testimony. Again, it was the jury's duty to assess whether they believed that explanation. You know, so when this court is determining prejudice, it would not be this court's role to determine if Mr. Doolin's explanation is credible. Really, what matters is that, you know, the jury had to decide credibility and the jury was, you know, given improper evidence upon which to do so. All right, thank you. Other questions, Justice Barberos? No, thank you. Justice McCaney? No questions. All right, thank you. I'm sorry, go ahead. I'm sorry, I was just going to say we would ask that this court grant the relief requested in the briefs. Thank you. Thank you. We'll consider the briefs and the arguments today. We'll take the matter under advisement and issue a decision in due course.